BROOKS R. BROWN (*pro hac vice*)
bbrown@goodwinlaw.com
W. KYLE TAYMAN (*pro hac vice*)
ktayman@goodwinlaw.com
**GOODWIN PROCTER LLP**
1900 N Street, NW
Washington, DC 20036
Tel.: +1 202 346 4000
Fax: +1 202 346 4444

DAVID E. FUNKHOUSER III (AZ No. 022449)
dfunkhouser@spencerfane.com
JESSICA A. GALE (AZ No. 030583)
jgale@spencerfane.com
**SPENCER FANE LLP**
2415 E. Camelback Road, Suite 600
Phoenix, AZ  85016
Tel.: (602) 333-5430
Fax: (602) 333-5431

Attorneys for Defendant:
QUICKEN LOANS, LLC (f/k/a Quicken Loans Inc.)

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

**PHOENIX DIVISION**

| | |
|---|---|
| Richard Winters, Jr., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Quicken Loans Inc.,<br><br>Defendant. | Case No. 2:20-cv-00112-MTL<br><br>**QUICKEN LOANS, LLC'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**<br><br>***ORAL ARGUMENT REQUESTED***<br><br>Date:     TBD<br>Time:    TBD<br>Ctrm.:   TBD<br>Judge:   Hon. Michael T. Liburdi |

**MEMORANDUM OF POINTS AND AUTHORITIES**

Pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6), Quicken Loans, LLC (f/k/a Quicken Loans Inc.) ("Quicken Loans") respectfully submits this Memorandum of Points and Authorities in support of its Motion to Dismiss the Third Amended Complaint ("TAC") filed by Plaintiff Richard Winters, Jr. ("Winters" or "Plaintiff"). For multiple reasons, the TAC continues to fail to state a cognizable claim for violation of the cellphone provision of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii), and continues to violate the first-to-file rule.

## INTRODUCTION

This Court already has granted two motions to dismiss this misdirected and baseless lawsuit. First, by Order dated September 4, 2020 (ECF No. 28) (the "September Order"), the Court (a) concluded that Winters' first amended complaint "failed to plausibly allege that [Quicken Loans] used an automatic telephone dialing system" ("ATDS") to place any of the challenged calls, "or that any of the calls at issue contained an artificial or prerecorded voice," and (b) specifically directed Plaintiff to allege "facts showing" this necessary element of his claim. Order at 5, 7. Second, by Order dated March 12, 2021 (ECF No. 40) (the "March Order"), the Court dismissed Winters' claims pursuant to the first-to-file rule (based upon a previously-filed overlapping class action (*Lopez*))[1] without reaching the issue of whether Winters' second amended complaint cured (and it did not) the ATDS/prerecorded voice pleadings defects identified by the Court in its September Order.

This motion should be granted for the same reasons (and others) as Quicken Loans' last two dismissal motions. As demonstrated below, the TAC—Winters' fourth attempt (and fourth failed attempt) to state a claim in this lawsuit—suffers from the same defects and issues as his previously-dismissed complaints.

First, the TAC remains devoid of the requisite plausible factual allegations sufficient to plead that any of the challenged calls contained a prerecorded message or artificial voice,

---

[1] *Lopez v. Quicken Loans Inc.*, No. 2:19-CV-13340 (E.D. Mich. Nov. 12, 2019), ECF No. 1 ("*Lopez*").

1

or that an ATDS was used to make any of the challenged calls or texts. Indeed, Winters' conclusory ATDS allegations are particularly defective in light of the Supreme Court's decision last week resolving what constitutes an ATDS for purposes of the TCPA, and reversing the Ninth Circuit's prior expansive interpretation of that statutory term. *Facebook, Inc. v Duguid*, No. 19-511, 2021 WL 1215717, at *4 (U.S. Apr. 1, 2021).

<u>Second</u>, Winters' vague and conclusory new allegations about an unidentified "Telemarketing Agent" purportedly making calls and texts on Quicken Loans' behalf pursuant to an unidentified contract are devoid of the requisite factual enhancement and belied by materials—*e.g.*, a call recording transcript and text messages—that this Court may properly consider in resolving this motion. Not only does Winters fail to identify the purported "Telemarketing Agent," but he pleads no factual allegations about the Agent's purported contract with Quicken Loans or any other factual allegations from which this Court could conclude that it is plausible that the purported "Agent" made calls or text messages to Winters on Quicken Loans' behalf pursuant to a contract or otherwise. *Priester v. eDegreeAdvisor, LLC*, No. 5:15-cv-04218, 2017 WL 4237008, at *2 (N.D. Cal. Sept. 25, 2017). This is not surprising, however, because (a) the transcript of the recording of the single October 4, 2018 call Winters identifies in the TAC confirms that it was made by a live Quicken Loans' team member (and was not a prerecorded message call from a third-party), and (b) the content of the challenged text messages to Winters also confirms that they came from Quicken Loans' team members. As such, the TAC is devoid of plausible factual allegations sufficient to sustain Winters' vicarious liability theory against Quicken Loans based upon the purported conduct of the "Telemarketing Agent."

<u>Third</u>, the TAC's conclusory allegations about the lack of consent for the challenged calls and texts are also contradicted by the transcript of the recording of the October 4, 2018 call. In the TAC, Plaintiff alleges, in conclusory terms parroting the language of the statute, that Quicken Loans "never received Plaintiff's prior express consent." TAC ¶ 35. Plaintiff's conclusory allegation is implausible because the recording's transcript confirms that Winters was expecting and had requested the call. ECF 32-3.

Finally, despite this Court's clear guidance in the March Order that Winters must plead a class or classes "not substantially similar to the proposed class" in *Lopez* to avoid dismissal, he has failed to do so. In the TAC, Winters vaguely defines the putative class to encompass individuals called or texted on Quicken Loans' behalf by an unidentified "Telemarketing Agent" during substantially the same class period as at issue in *Lopez*. Plaintiff's supposedly "new" class is actually a veiled carbon copy of the alleged *Lopez* class: the putative class definition in *Lopez* also purports to encompass individuals called or texted on Quicken Loans' behalf by unidentified third-parties during substantially the same time period. The first-to-file rule thus remains squarely applicable to the TAC.

For these and the additional reasons discussed below, the Court should dismiss Plaintiff's claims for a third time, this time with prejudice.[2]

## PROCEDURAL HISTORY

Winters filed this lawsuit on January 15, 2020, vaguely pleading that over the course of a 12-month period, he "received multiple solicitation calls and solicitation texts from [Quicken Loans]" to his cellphone number ending in -6678 using an ATDS, prerecorded message, or artificial voice message (without identifying precisely which one was used in connection with any call or text). ECF No. 1 at ¶¶ 1, 9-12, 23, 28. Based on these sparse and conclusory allegations, Winters purported to assert two "claims" for violation of the TCPA's cellphone provision: one for "negligent violations" (Count 1) and one for "knowing and/or willful violations" (Count 2). *Id.* ¶¶ 46-53. On January 31, 2020, Winters filed the FAC, amending only his proposed class definitions. *Compare* ECF No. 1 ¶¶ 30-32 *with*

---

[2] Quicken Loans raised two additional arguments in its motion to dismiss the first amended complaint: (1) that Plaintiff failed to plead sufficient factual allegations to sustain Plaintiff's pleading burden under Rule 8; and (2) that Plaintiff's claim in Count 2 for "knowing and/or willful violations" should be dismissed because such is not a standalone claim. ECF No. 12 at 6-7, 11-12. The Court declined to dismiss Plaintiff's first amended complaint on either ground. Order at 3-5, 8-9. Quicken Loans incorporated those arguments by reference (*see* ECF No. 32 at 2-3, n. 2) in its motion to dismiss the second amended complaint in order to preserve them. Quicken Loans thus again incorporates those arguments herein by reference *see* ECF No. 12 at 6-7, 11-12 and ECF No. 32 at 2-3, n. 2) to preserve them.

3

FAC ¶¶ 20-32.[3]

Quicken Loans filed a motion to dismiss the FAC on March 16, 2020. ECF No. 12. As noted, the Court granted that motion in an Order dated September 4, 2020. ECF No. 28. In that Order, the Court concluded that the FAC failed to state a cognizable TCPA claim because (1) "the [FAC's] 'sparse factual allegations are insufficient to plausibly suggest, even indirectly, that Defendant used an ATDS when it called him,'" and (2) "Plaintiff has also not adequately alleged that the calls used an artificial or prerecorded voice." Order at 7. The Court permitted Winters the opportunity to further amend his FAC, specifically instructing him to "allege facts showing that Defendant used an automatic telephone dialing system or that the calls contained an artificial or prerecorded voice." *Id.* at 8.

Plaintiff filed the SAC on September 18, 2020, failing to address the pleading deficiencies that led the Court to dismiss the FAC, and introducing new deficiencies into the SAC. ECF No. 30. Quicken Loans then filed motions to dismiss or stay the SAC on October 2, 2020, introducing the October 4, 2018 call recording transcript to reveal the contradictions between the facts and Plaintiff's unfounded allegations of a prerecorded message or lack of consent. ECF No. 32 & 33. The Court dismissed Plaintiff's SAC last month in an Order dated March 12, 2021, "begin[ning] its analysis with the first-to-file rule" argued in the motion to stay, and denying the remainder of Quicken Loan's motions as moot and without prejudice once it found that "the first-to-file rule applie[d]." ECF No. 40 at 2, 5. The Court again permitted Winters the opportunity to further amend his SAC, specifically instructing him to "allege a proposed class or classes that are not substantially similar to the proposed class in the [first-filed] case." *Id.* at 6.

Plaintiff filed the TAC on March 26, 2021. ECF 42. Notably, Plaintiff now alleges that the initial call he previously alleged was made by Quicken Loans on October 4, 2018—

---

[3] Although Plaintiff continues to allege the receipt of unwanted text messages directly by Quicken Loans and is pursuing claims in his personal capacity based on those texts, consistent with the amendments made to the class definition when he filed the FAC, he is no longer seeking to represent or certify a class of persons that received text messages directly from Quicken Loans.

4

the only challenged call Plaintiff identifies in the Complaint—was in fact a prerecorded voice message placed by a supposed (and unidentified) "Telemarketing Agent" that prompted Plaintiff to press a number to be transferred to a live Quicken Loans representative. TAC ¶ 15. He further purports to now limit the putative classes to only those individuals "who received any solicitation/telemarketing telephone calls from the [unidentified] Telemarketing Agent pursuant to its contract with Defendant." *Id.* ¶¶ 39-40. As Quicken Loans now shows, however, Plaintiff not only failed to address the pleading deficiencies that led the Court to dismiss his previous complaints, but has introduced new deficiencies into the TAC. The Court should, therefore, dismiss the TAC with prejudice and foreclose Plaintiff's effort to burden Quicken Loans with additional costs to defend this misdirected and baseless lawsuit.

## ARGUMENT

### I.     The Motion To Dismiss Standard.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must meet Rule 8(a)'s pleading requirements and allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). Rather, the allegations "must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). Application of these well-established standards here demonstrates that Winters has failed (again) to state a cognizable cellphone provision claim against Quicken Loans.

## II. **The TAC Fails to Plead an ATDS Claim in Multiple Respects, and Should be Dismissed.**

The TAC fails to sufficiently plead (a) the ATDS/artificial or prerecorded voice message element of Winters' cellphone provision claim; (b) facts to plausibly support the existence and presence of the supposed "Telemarketing Agent," let alone sufficient facts to support Winters' vicarious liability theory; (c) the lack of consent element of the cellphone provision claim; and (d) facts to support the knowing or willful element in Count II.  Each of these deficiencies independently, and together, warrant dismissal.

### A. PLAINTIFF FAILS TO PLEAD THE ATDS/ARTIFICIAL VOICE OR PRERECORDED MESSAGE ELEMENT OF HIS TCPA CLAIM.

As noted, an essential element of any cellphone provision claim is that (a) the challenged calls or texts were made using an "automated telephone dialing system," or (b) in the case of calls, were made using an "artificial voice or prerecorded message." 47 U.S.C. § 227(b)(1)(A).  As this Court correctly concluded in the September Order, Plaintiff's FAC contained only conclusory allegations that failed to even permit a plausible inference that an ATDS or pre-recorded message was used to make any of the challenged calls or texts—and that was before the Supreme Court reversed the Ninth Circuit on the meaning of what constitutes an ATDS.  September Order at 7.  The TAC advances the same defective ATDS and pre-recorded voice allegations this Court found insufficient to state a claim in dismissing the FAC, and otherwise relies upon new "allegations" that are belied by the transcript of recordings of the only challenged call—the October 4, 2018 call—he identifies in the TAC.  Pursuant to this Court's Order (ECF No. 34), Quicken Loans previously filed a transcript of the recording with the Court (ECF No. 32).  As matter of law, this Court properly may consider the transcripts of these recordings in ruling on this Motion, because the TAC squarely relies upon and puts the content of the October 4 call at issue.[4]

---

[4] Specifically, Plaintiff relies upon and describes the content of the challenged October 4, 2018 call in the TAC.  TAC ¶ 15.  Indeed, this is the only challenged call as to which Plaintiff offers any factual allegations at all. *See, e.g., id.* ¶ 16 (allegations generally as to "subsequent calls").  And, the content of the October 4 call is central to Plaintiff's TCPA claim.  In fact, Winters would not have any case at all without making those allegations

6

As this Court recognized in its September Order dismissing the FAC, Plaintiff must plead plausible facts sufficient to support his conclusion that an ATDS was used to make each of the challenged calls and texts or that the challenged calls contained a prerecorded voice message. Order at 8. In an attempt (albeit failed) to do so, Plaintiff only offers new "factual allegations" about the October 4 call and asserts, in conclusory terms, that it was like other calls about which Plaintiff nowhere pleads any factual allegations. *See* TAC ¶¶ 14-17. But this weak effort to respond to this Court's clear direction about what Plaintiff must plead to state a cognizable claim—factual allegations, not conclusions—gets him nowhere because those allegations plead nothing about whether Plaintiff's telephone number was generated randomly or sequentially, and his allegations about the October 4 call are contradicted by the transcript of the recording, which confirms that it contained no prerecorded message. Plaintiff's vague and conclusory allegations about other unspecified calls, supposedly like the October 4 call, are similarly insufficient because there is no basis for this Court to conclude they are sufficiently plausible given the patent inaccuracies in Plaintiff's allegations about the October 4 call.

As to the ATDS element, following the Supreme Court's decision last week reversing the Ninth Circuit's prior, expansive interpretation of what constitutes an ATDS, Plaintiff must plead plausible factual allegations that the "device" used to make the challenged calls and texts has "the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Duguid*, 2021 WL 1215717, at *2, 5; *Schick v. Compass Lending Corp.*, No. 19-1736, 2019 WL 6050256, at *2 (D. Ariz. Nov. 15, 2019) (to survive the pleading stage, a "[p]laintiff must allege sufficient facts to allow the Court to

---

about the contents of that call, which he contends are illustrative of what he experienced during other (non-specified) calls about which he offers no factual allegations. *Id.* ¶¶ 16-17. In these circumstances, federal courts routinely consider recordings in deciding motions to dismiss. *See, e.g.*, *Weiner v. ARS Nat'l Servs., Inc.*, 887 F. Supp. 2d 1029, 1030 n.1 (S.D. Cal. July 5, 2012) (granting request to take judicial notice of phone call audio file in support of motion to dismiss); *Howell v. Joffe*, 483 F. Supp. 2d 659, 667 (N.D. Ill. 2007) (considering audio recording of voice mail message; message was "referenced in complaint and central to [plaintiff's] claims"). This Court can and should do the same here.

7

1  'reasonably infer' that Defendant used an ATDS."); *Cunningham v. Chiorzi*, No. 20-386, 2020 WL 3104508, at *2 (D. Or. June 11, 2020); *Stavrinides v. Pac. Gas & Elec. Co.*, No. 16-0433, 2016 WL 1598744, at *2 (N.D. Cal. Apr. 21, 2016); *Gragg v. Orange Cab Co., Inc.*, 942 F. Supp. 2d 1111, 1114 (W.D. Wash. 2013). Likewise, to plead a cellphone provision claim predicated upon the use of an artificial or prerecorded voice message, Plaintiff must allege facts "suggesting that the voice on the other end of the line was prerecorded." *Trumper v. GE Capital Retail Bank*, 79 F. Supp. 3d 511, 513 (D.N.J. 2014); *see also Daniels v. ComUnity Lending, Inc.*, No. 13-0488, 2015 WL 541299, at * 7 (S.D. Cal. Feb. 9, 2015) (dismissing TCPA claim where plaintiffs alleged "that calls to Plaintiffs' cellular telephones included prerecorded voice calls," but the complaint "allege[d] no facts to make this allegation plausible"); *Johansen v. Vivant, Inc.*, No. 12-7159, 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012) (dismissing claim where plaintiff failed to "describe the phone messages he received in laymen's terms or provide the circumstances surrounding them to establish his belief that the messages were prerecorded or delivered via the ATDS"). The TAC, however, is devoid of the requisite plausible factual allegations of the use an ATDS or prerecorded/artificial voice messages in connection with any of the challenged calls or texts.

As this Court previously recognized, in the FAC, Plaintiff failed to "plausibly suggest, even indirectly," facts to support the ATDS or prerecorded/artificial voice message elements of his cellphone provision claim. Order at 7. In an apparent (but futile) attempt to correct this deficiency, Plaintiff adds conclusory allegations to the TAC that on the "initial" October 4, 2018 call from the unidentified "Telemarketing Agent," "there was a pre-recorded voice on the line" until Plaintiff "pressed a number to be transferred to a live representative." TAC ¶ 15. Plaintiff further alleges that during each of the subsequent calls that he challenges (none of which are identified or described in the TAC), "there was either a pre-recorded voice on the line," or "there was a click and/or beep before a live person came onto the phone." *Id.* ¶ 16.

In the first instance, Plaintiff's allegations remain legally insufficient to sustain a cellphone provision claim. For example, Plaintiff's conclusory allegation of a "pre-recorded voice" is an unadorned conclusion—not a factual allegation—that says nothing at all about *how* or *why* Plaintiff concluded that the voice was "pre-recorded." Indeed, Plaintiff makes no allegations at all about the content of the alleged message nor provides any factual basis that the message was prerecorded or contained a prerecorded or artificial voice. *See id.* Plaintiff's failure to plead factual allegations about calls to his purported cellphone using an artificial voice or prerecorded message is not surprising. Quicken Loans does not make such calls about potential mortgage loans to individuals like Plaintiff, so his speculation about such calls is false and unsupportable. Without actual factual allegations (and where the recordings transcript of the only call Plaintiff identifies in the TAC—the October 4, 2018 call— refutes his bald pre-recorded message allegation), Plaintiff offers this Court and Quicken Loans nothing more than the precise type of conclusory and speculative allegations the Supreme Court has held to be insufficient to state a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

Likewise, following the Supreme Court's decision in *Duguid* and its reversal of the Ninth Circuit, Plaintiff's allegations that he heard "clicks" or "beeps" are wholly irrelevant to whether Plaintiff's purported telephone number was dialed by an ATDS—that is, as a result of random or sequential number generation. TAC ¶¶ 16-17. Winters makes no allegation (none) that his number was randomly or sequentially dialed. And the content of the October 4, 2018 call, which reveals that Winters was expecting and requested the challenged call, is entirely inconsistent with random or sequential number generation. Moreover, Winters' allegations that the system supposedly had "predictive capabilities" and could dial "without human intervention" (TAC ¶¶ 18-19) gets him nowhere with respect to the ATDS element after *Duguid*. There, the Supreme Court expressly rejected arguments that such allegations are relevant to the ATDS analysis. 2021 WL 1215717, at *6-7 (rejecting argument that ATDS means a device that "has the 'capacity to dial numbers without human intervention'"). These basic pleadings defects in Winters' ATDS

allegations with respect to the October 4, 2018 call and other unidentified calls are fatal. *E.g.*, *Daniels*, 2015 WL 541299, at * 7.

Similarly, Winters makes no new allegations at all (none) in the TAC to allege (plausibly) that any (let alone each) challenged text message was sent using an ATDS. Factual allegations about each alleged text message are "particularly necessary here because [Winters] seeks recovery for each violation of the TCPA." *Abbas v. Selling Source, LLC*, No. 09-3413, 2009 WL 4884471, at *2 (N.D. Ill. Dec. 14, 2009) (emphasis added); *see also Gulden v. Consol. World Travel Inc.*, No. 16-01113, 2017 WL 3841491, at *3 (D. Ariz. Feb 15, 2017) (dismissing TCPA claim for failure to plead sufficient facts concerning the identity of the caller and the character of the call). Instead, just as in the FAC and SAC, the TAC continues only to offer the same factual allegations about a single text message personalized to Plaintiff and bearing the name and personal contact information (including personal cellular number and work email address) for a particular Quicken Loans team member. *Id.* ¶ 31. This personalized text message, as Quicken Loans demonstrated in its motions to dismiss the FAC and SAC, bears no indicia of a text sent using an ATDS—that is, sent to Plaintiff as a result of the use of a random or sequential number generator. *Duguid*, 2021 WL 1215717, at *5-7; *cf. Holt v. Facebook, Inc.*, 240 F. Supp. 3d 1021, 1031 (N.D. Cal. 2017). Instead, the only plausible inference to be drawn from Winters' allegations is that this text message (again, the only one about which Plaintiff pleads any factual allegations) was sent specifically to Plaintiff from an individual team member at Quicken Loans. And, because it is, Winters again has fallen short of pleading plausible factual allegations of the use of an ATDS to send any of the challenged text messages. Numerous courts have held that messages of a personalized nature indicate that no ATDS was used. *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (finding allegation of the use of an ATDS to send text messages was conclusory and did not meet the requisite pleading standard); *Weisberg v. Stripe, Inc.*, No. 16-0584, 2016 WL 3971296, at *3-4 (N.D. Cal. July 25, 2016); *Thomas-Lawson v. Koons Ford of Balt., Inc.*, No. 19-

3031, 2020 WL 1675990, at *4 (D. Md. Apr. 6, 2020).  This Court should reach the same conclusion here.

Beyond this, Plaintiff's allegations about the October 4 call do not advance—and, instead, undermine—his attempt to plead the ATDS or prerecorded message/artificial voice element of his cellphone provision claim.  This is because the recording transcripts of that call—again, the only challenged call about which Plaintiff pleads any factual details—belie Plaintiff's conclusory allegations about the content of that call and the existence of a mysterious third-party "Telemarketing Agent."  ECF 32-3.  Contrary to Winters' allegations, there was no "prerecorded voice on the line when Plaintiff answered the call," nor was it the case that he "pressed a number to be transferred to a live representative."  TAC ¶ 15.  Instead, when Plaintiff answered the phone, a (live) Quicken Loans team member introduced herself as "Nikki . . . with Quicken Loans" and said that she was "calling to help [Winters] in the home refinance information that [he was] inquiring about online."  ECF 32-3.  In response, Winters confirms he was expecting to hear from Quicken Loans, stating, "That's correct Nikki, can you email me the information please? I asked for that last night."  *Id*.  At that point, Winters was advised that another (live) team member, Jeremy, was on the line and able to help him further.  *Id*.  After the call was transferred to Jeremy, once again Winters asked that Quicken Loans "email [him] the information [he] requested yesterday."  *Id*.  After confirming that the information Winters wanted was Jeremy's personal and work contact information at Quicken Loans, Jeremy advised that he would "go ahead and just send [Winters] a quick text message, and then [he would] go ahead and send [Winters] a quick email right now also, with [his] contact information on it."  *Id.*  Winters made no objection to receiving the text message.  In short, the October 4 recording transcript disproves each and every one of the factual allegations added to the TAC about the October 4 call by Winters in an attempt to bolster the defective ATDS or prerecorded message/artificial voice allegations identified by this Court in dismissing the FAC.

Under these circumstances, Plaintiff has once again "provided nothing beyond a threadbare recitation of one of the elements of h[is] cause of action, that []he was called by a machine." *Forney v. Hair Club for Men Ltd., Inc.*, No. 16-9640, 2017 WL 4685549, at *2 (C.D. Cal. June 26, 2017) (dismissing TCPA claim where "only allegation made by Plaintiff supporting the use an [ATDS] is her single paragraph stating that she was called by an [ATDS]"). There are no plausible factual allegations that he received a single call containing a prerecorded or artificial voice message. Nor are there any plausible factual allegations that any of the challenged calls or texts were made with an ATDS. Instead, in response to this Court's dismissal order, Plaintiff has done nothing more than advance demonstrably false allegations about an October 4 call and continues to rely upon the same defective allegations about a personalized text message this Court previously found insufficient to state a claim. Accordingly, this Court should reach the same conclusion as it did in dismissing the FAC and dismiss Plaintiff's claims for failure to adequately plead an essential element (this time, with prejudice). *See Bodie v. LYFT*, No. 16-2558, 2019 WL 258050, at *2 (S.D. Cal. Jan. 16, 2019) (dismissing complaint alleging TCPA violations that "merely parrots statutory definition of an ATDS").

### B. PLAINTIFF'S ALLEGATIONS ABOUT A "TELEMARKETING AGENT" FAIL TO SUPPORT A PLAUSIBLE TCPA CLAIM AND VICARIOUS LIABILITY.

Winters' broad and conclusory allegations regarding the unidentified "Telemarketing Agent" are insufficient to state a cognizable cellphone provision claim against Quicken Loans under direct or vicarious liability, and otherwise fail to provide fair notice to Quicken Loans of the claims against it and the exposure it faces. *Twombly*, 550 U.S. at 555.

Winters does not plead any facts about the identity of the supposed agency or agent to allow this Court to conclude that it is plausible that a "Telemarketing Agent" existed and made calls using an ATDS or artificial voice or prerecorded message on Quicken Loans' behalf, as is necessary to invoke the TCPA's cellphone provision. The TAC is utterly devoid of any allegations of the name of the supposed agent, its location, or any facts about

the agent's conduct or actions to permit Quicken Loans and this Court to understand the allegations. Nor does he plead any facts about the existence or the content of the supposed contract between Quicken Loans and the "Telemarketing Agent" to allow this Court to conclude that it is plausible that such a contract existed, and to allow Quicken Loans to meaningfully respond to Plaintiff's claims. TAC ¶ 6. Plaintiff does not plead a single fact to support the claims that any agent or contract with any agent existed. *See generally* TAC ¶¶ 6-13. This is consistent with the allegations in the original complaint, the FAC and SAC, where, in stark contrast to his latest allegations, Plaintiff alleged that Quicken Loans—not any unidentified agent or other entity—placed the challenged calls and text message at issue. It is implausible in light of his prior allegations that the challenged calls and text messages were placed by an unidentified third party (and not Quicken Loans). The simple fact of the matter is that Winters has changed course in a last ditch attempt to save this baseless and misdirected lawsuit with unsupported allegations about calls and texts made by an unidentified third party on Quicken Loans' behalf pursuant to some unidentified contract. This Court should not countenance Winters' conduct, particularly where his three prior complaints to this Court—which this Court and Quicken Loans both spent time and resources to address—were all predicated upon contrary allegations that the challenged calls and texts came from Quicken Loans itself. *See* September Order at 1-2.

Furthermore, the lone October 4 call and single text message that Plaintiff describes in the TAC, allegedly made and sent by the "Telemarketing Agent," prove that Plaintiff's allegations about the use of a Telemarketing Agent are flatly untrue. The transcript of the October 4 call (ECF No. 32-2) wherein Plaintiff spoke directly to a live representative of Quicken Loans and was not transferred following a prerecorded or artificial voice message, disproves the existence of the mysterious Telemarketing Agent. Likewise, Winters' allegations about a single text message are contradicted by the lone text sent by a Quicken Loans team member ("Jeremy"), a text that spells out the team member's title—which is not "Telemarketing Agent"—and an "@quickenloans.com" email address in the very text quoted by the Plaintiff. TAC ¶ 31. Plaintiff alleges no facts on which to rest a plausible

claim that a "Telemarketing Agent" exists, and absent such factual allegations, Quicken Loans is deprived of the "fair notice" of Plaintiff's claims required by Rule 8. *Abbas*, 2009 WL 4884471, at *2.

Even if Winters' conclusory allegations about the existence of a supposed Telemarketing Agent were plausible (and they are not), Plaintiff has not alleged sufficient facts to support his theory of vicarious liability against Quicken Loans on the basis of calls or text messages placed by the Telemarketing Agent. TAC ¶ 13. As Plaintiff well knows from this Court's recent dismissal of another of his TCPA complaints that is similar to the TAC here, to plead vicarious liability under the TCPA, Plaintiff must plead "specific, non-conclusory allegations concerning the nature of the agency relationship between the defendant and the caller and the defendant's control over the caller's activities." *Winters v. Grand Caribbean Cruises Inc.*, No. CV-20-00168, 2021 WL 511217, at *6 (D. Ariz. Feb. 11, 2021). But Winters alleges no such "specific, non-conclusory" allegations about the supposed relationship between Quicken Loans and the Telemarketing Agent. Winters instead offers *only* conclusory assertions that an agency relationship existed through a "contract," (TAC ¶ 7), which gave the agent "express authority" to act on behalf of Quicken Loans (TAC ¶ 9) and that Quicken Loans somehow ratified those acts (TAC ¶ 11), and that Quicken Loans was on notice of the agent's TCPA violations as a result of unidentified "complaints" it received from unnamed "consumers" (TAC ¶ 12). By using such bald assertions and legal conclusions, Winters has "made it impossible to analyze the extent to which" any agency relationship may exist. *Id.* at *5. Indeed, the TAC's allegations are precisely the type "of boilerplate agency allegations" that have led numerous courts to dismiss claims based on a theory of vicarious liability. *Winters*, 2021 WL 511217, at *6 n.7 (citing cases); *Rogers v. Postmates Inc.*, No. 19-05619, 2020 WL 1032153, at *4 (N.D. Cal. Mar. 3, 2020) (dismissing TCPA claims based on vicarious liability because "nebulous allegations do not support a plausible inference that Postmates exercised any control over the sender of the text necessary to establish an agency relationship."). This Court should do the same here.

### C. THE TAC FAILS TO PLEAD PLAUSIBLE ALLEGATIONS THAT PLAINTIFF DID NOT CONSENT TO THE CHALLENGED CALLS.

The Court also should dismiss the TAC for lack of plausible factual allegations that Plaintiff did not consent to the challenged calls and texts. Lack of consent is a necessary element of a cellphone provision claim. 47 U.S.C. § 227(b)(1)(A); Order at 3 (citing *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012)). To meet his pleadings burden, Plaintiff alleges in the TAC that he "was never a customer of [Quicken Loans] or the Telemarketing Agent and never provided his cellular telephone number [to] [Quicken Loans] or the Telemarketing Agent for any reason whatsoever." TAC ¶ 35. Plaintiff also claims that he "told [Quicken Loans] to stop calling [him] on th[e] first October 4, 2018 phone call." *Id.* ¶ 15. But, as the transcript of the October 4 call recordings confirm, these allegations are untrue and implausible.

Instead, during the October 4 call (ECF 32-3), Plaintiff repeatedly confirmed (when speaking with multiple live Quicken Loans team members) that, the night before, he had requested information concerning a home refinance. The first Quicken Loans team member with whom he spoke specifically confirmed that she was calling to help Winters with regard to that online inquiry, which Winters confirmed was "correct." ECF 32-3. Nor did Winters request that Quicken Loans "stop calling [him] on this first October 4, 2018 phone call," as he incorrectly alleges. TAC ¶ 15. To the contrary, when the Quicken Loans team member attempted to help Winters with his refinance (as Winters requested), Winters explained that he was driving and "right now is a bad time to talk" and that he was unable to look at his calendar to set an appointment time. ECF 32-3. The Quicken Loans team member (Jeremy) then offered to set a date and time in the future for Quicken Loans to call Winters, to which Winters confirmed "That's fine." *Id.* At no point during this conversation did Plaintiff (as he alleges) request that Quicken Loans stop calling him. And far from supposedly "invading Plaintiff's privacy," Winters responded that Quicken Loans' assistance was "Wonderful." *Id.* Apart from demonstrating that Plaintiff's allegation (TAC ¶ 15) is false, the actual content of the call shows that Plaintiff did, in fact, consent to the challenged calls.

15

And the TAC pleads no factual allegations to plausibly suggest otherwise or otherwise support his other conclusory lack of consent allegations. As such, Plaintiff has failed to plead plausible factual allegations in support of the lack of consent element of his cellphone provision claim.

### D. PLAINTIFF'S SECOND COUNT SHOULD BE DISMISSED.

In Count 2 of the TAC, Winters continues to purport to assert a derivative cause of action against Quicken Loans for a "knowing and/or willful" violation of the TCPA's cellphone provision. TAC ¶¶ 58-61. That Count fails to state a claim.

First, the claim is entirely derivative of and dependent upon Plaintiff's defective claim in Count 1, and so fails with it for the reasons stated above.

Second, even assuming arguendo that Winters' "claim" for treble damages and injunctive relief might be a separate cause of action, the claim should still be dismissed for the additional reason that he again pleads no plausible factual allegations of any knowing or willful violation of the cellphone provision by Quicken Loans in connection with any of the challenged calls or texts. As shown by the transcripts of the October 4 call recordings (ECF 32-3), no willfulness could possibly attach where Winters invited the challenged communications. Without such factual allegations, there is no basis to permit Count 2 to proceed.

### III. Dismissal Remains Appropriate because of the First-Filed *Lopez* Action.

In the March Order dismissing the SAC under the first-filed doctrine because of the preexisting and overlapping putative class alleged in *Lopez*, this Court gave leave to Winters to "allege a proposed class or classes that are not substantially similar to the proposed class in the [*Lopez*] case." ECF No. 40 at 6. But Winters has failed to comply with this clear directive. Indeed, Winters still proffers putative class definitions overlapping with and subsumed by those in *Lopez*. The only change to the class definitions alleged in the TAC is to define the putative classes by reference to calls and texts made to persons by the unidentified "Telemarketing Agent pursuant to its contract with [Quicken Loans]." TAC ¶¶ 39-40. This is insufficient to avoid dismissal under the first-filed doctrine, because the

*Lopez* class definition already includes calls and texts made by any "third party acting on [Quicken Loans'] behalf." ECF No. 40, at 2. Calls and texts made by the purported "Telemarketing Agent" are thus subsumed in and overlapping with the *Lopez* class definition. That is the end of the first-filed-rule inquiry. In its motion to stay (ECF 33), Quicken Loans demonstrated that all the factors for application of the first-filed-rule are met here. (In the interest of brevity, Quicken Loans incorporates its first-filed-rule arguments from its motion to stay by reference rather than restating them.) This Court agreed and the TAC offers no legitimate basis for this Court to change its conclusion. The class definitions between this case and *Lopez* are still overlapping, and the first-filed doctrine remains applicable and supports dismissal.

## **CONCLUSION**

For the forgoing reasons, Quicken Loans respectfully requests that this Court grant the Motion and dismiss the TAC for failure to state a claim upon which relief can be granted, this time with prejudice.[5]

DATED this 9th day of April, 2021.

Respectfully submitted,

By: /s/ *David E. Funkhouser III*
BROOKS R. BROWN (*pro hac vice*)
*bbrown@goodwinlaw.com*
W. KYLE TAYMAN (*pro hac vice*)
*ktayman@goodwinlaw.com*
**GOODWIN PROCTER LLP**
1900 N Street, NW
Washington, DC 20036
Tel.: +1 202 346 4000

DAVID E. FUNKHOUSER III
*dfunkhouser@spencerfane.com*
JESSICA A. GALE
*jgale@spencerfane.com*
**SPENCER FANE LLP**
2415 E. Camelback Road, Suite 600
Phoenix, AZ 85016

---

[5] *See King v. Ariz.*, 2010 WL 3219139, at *3 (D. Ariz. Aug. 13, 2010) (granting dismissal with prejudice where Plaintiff failed to correct deficiencies identified in Court's prior dismissal order and recognizing "undue prejudice" to defendant of responding to multiple complaints).

Tel.: (602) 333-5430

Attorneys for Defendant:
QUICKEN LOANS, LLC (f/k/a Quicken Loans Inc.)

**CERTIFICATE OF SERVICE**

I hereby certify that on **April 9, 2021**, a copy of the foregoing was filed electronically using the Clerk of Court's CM/ECF system, which will provide notice to all counsel of record.

David J. McGlothlin, Esq.
Ryan L. McBride, Esq.
Kazerouni Law Group, APC
2633 E. Indian School Road, Ste. 460
Phoenix, AZ 85016
david@kazlg.com
ryan@kazlg.com
Attorneys for Plaintiff

/s/ Katrina Thomas
Katrina Thomas

**CERTIFICATE OF CONFERRAL**

Pursuant to L.R. Civ. 12.1(c), undersigned counsel personally certifies that counsel for Defendant notified counsel for Plaintiff of this motion and the issues asserted herein by email on April 6, 2021, and the parties have been unable to agree that the pleading is curable by amendment.

/s/ David E. Funkhouser III
DAVID E. FUNKHOUSER III