WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Winters, Jr., <br>    Plaintiff, <br> v. <br> Quicken Loans Incorporated, <br>    Defendant. | No. CV-20-00112-PHX-MTL <br><br> **ORDER** |

Plaintiff Richard Winters, Jr. ("Winters") has filed a lawsuit against Defendant Quicken Loans Incorporated ("Quicken Loans") alleging two claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. (Doc. 42.) Quicken Loans filed a Motion to Dismiss Plaintiff's Third Amended Complaint and requested oral argument. (Doc. 43, the "Motion".) The Parties have fully briefed the Motion. The Court finds that oral argument will not aid the decisional process.[1] The Motion is resolved as follows.

## I. FACTUAL BACKGROUND

Unlike previous iterations, the Third Amended Complaint introduces a "Telemarketing Agent contracted by" Quicken Loans who "contacted [Winters], via calls and text messages, on his cellular telephone." (Doc. 42 at ¶ 6.) Winters alleges "[t]he Telemarketing Agent was operating pursuant to a contract between [Quicken Loans] and the Telemarketing Agent to place telemarketing calls and texts on behalf of [Quicken

---

[1] *See, e.g., Frost v. Diocese of San Bernardino Educ. & Welfare Corp. for ben. of St. Catherine of Alexandria*, 302 F. App'x 729, 730 (9th Cir. 2008); *see also* LRCiv 7.2(f); Fed. R. Civ. P. 78(b).

Loans]." (Doc. 42 at ¶ 7.) Winters also alleges that "the Telemarketing Agent was to place the calls using an automatic telephone dialing system or a prerecorded voice to consumers in the United States, including to consumers in Arizona such as [Winters], to generate leads for [Quicken Loans]." (*Id.* at ¶ 8.) Winters next alleges:

> Pursuant to the contract, [Quicken Loans] maintained the right to substantially control the Telemarketing Agent's actions including by specifying the nature and type of the calls to be placed, the means by which such calls were to be placed, the content of such calls, and by retaining the right to terminate the contract unilaterally to enforce its control over the Telemarketing Agent.

(*Id.* at ¶ 10.) After that, Winters alleges Quicken Loans "had actual knowledge of the conduct of the Telemarketing Agent who was acting specifically pursuant to its contract with [Quicken Loans] and [Quicken Loans] therefore ratified the act" and accepted the benefit of the Telemarketing Agent's actions. (*Id.* at ¶ 11–12.) Finally, Winters alleges that Quicken Loans was "on notice that the Telemarketing Agent [was] placing calls in violation of the TCPA" and that Quicken Loans did not take "steps to cease such actions as permitted through its contract with the Telemarketing Agent and thus [ratified] its conduct." (*Id.* at ¶ 12.)

Around October 2018, Winters alleges "a Telemarketing Agent contracted by Quicken Loans contacted [Winters], via calls and text messages, on his cellular telephone . . . in an effort to sell or solicit" services by Quicken Loans. (*Id.* at ¶ 6.) The Telemarketing Agent utilized an automatic telephone dialing system ("ATDS") with predictive capabilities in violation of federal law. (*Id.* at ¶ 8, 32.) Winters also alleges that "[t]he Telemarketing Agent was operating pursuant to a contract between" it and Quicken Loans "to place telemarketing calls and texts on behalf of" Quicken Loans. (*Id.* at ¶ 7; *see id.* at ¶ 9.) Winters details one phone call on October 4, 2018, where he received a call with "a pre-recorded voice on the line when [Winters] answer[ed]. [Winters] pressed a number to be transferred to a live representative and [he] was transferred to a live

person." (*Id.* at ¶ 15.) "The live representative identified themselves as 'Quicken Loans.' [The Quicken Loans] representative then attempted to solicit [Winters] for a home loan. [Winters] told [the representative] to stop calling [Winters] on this first October 4, 2018 phone call." (*Id.* at ¶ 15.) The calls, however, continued. (*Id.* at ¶¶ 16, 22.)

Sometimes Winters was greeted with a pre-recorded voice; other times he would answer, hear a click or beep, and then a live representative would answer the phone. (*Id.* at ¶ 16.) Based on this evidence, Winters alleges the Telemarketing Agent used an ATDS with predictive capabilities as defined by 47 U.S.C. § 227(a)(1). (*Id.* at ¶¶ 17–18.) Winters alleges this is accomplished through a computer system the Telemarketing Agent uses. (*Id.* at ¶¶ 19–20.) He also alleges the Telemarketing Agent contacted him from Quicken Loans telephone numbers (*Id.* at ¶ 21.) In addition to phone calls, Winters alleges that he received numerous text messages through an ATDS system as defined and prohibited by 47 U.S.C. § 227(a)(1) and 47 U.S.C. § 227(b)(1)(A). (*Id.* at ¶ 32.) In the Third Amended Complaint, however, Winters only identifies one specific text message he received on October 5, 2018:

> Jeremy Streicher-Martinez Mortgage Banker Call or Text
> (480) 305-9634 Email: JeremyStreicher-Martinez@quickenloans.com Fax: (844) 429-7701
> NMLS: 1052442

(*Id.* at ¶ 31.)

Winters brings suit individually and on behalf of members of two proposed classes, "The ATDS Call Class" and "The ATDS Call Revocation Class."[2] (Doc. 42 at ¶¶ 39–40; *See generally*, Doc. 42 at ¶¶ 38–53.) Winters defines The ATDS Call class as:

> All persons within the United States who received any solicitation/telemarketing telephone calls from the

---

[2] The Third Amended Complaint alleges Winters' membership in three classes, but only goes on to describe two classes in any detail. (*See generally*, Doc. 42 at ¶¶ 38–53.)

- 3 -

> Telemarketing Agent pursuant to its contract with Defendant to said person's cellular telephone made through the use of any automatic telephone dialing system or an artificial or prerecorded voice and such person had not previously consented to receiving such calls within the four years prior to the filing of this Complaint

(Doc. 42 at ¶ 39.) Winters defines The ATDS Call Revocation class as:

> All persons within the United States who received any solicitation/telemarketing telephone calls from the Telemarketing Agent pursuant to its contract with Defendant to said person's cellular telephone made through the use of any automatic telephone dialing system or an artificial or prerecorded voice and such person had revoked any prior express consent to receive such calls prior to the calls within the four years prior to the filing of this Complaint.

(Doc. 42 at ¶ 40.) Winters estimates that these two classes include "thousands of members." (Doc. 42 at ¶ 44.)

## II.   STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 545, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint, however, should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle it to relief." *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir. 2000).

The Court must accept material allegations in a complaint as true and construe them in the light most favorable to Plaintiffs. *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1983). "Indeed, factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)." *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Review of a Rule 12(b)(6) motion is "limited to the content of the complaint." *North Star Int'l*, 720 F.2d at 581.

## III.  DISCUSSION

A private right of action exists for violations of the TCPA. 47 U.S.C. § 227(b)(3). Winters alleges a negligent violation (Count 1) and a knowing or willful violation (Count 2) of the TCPA by Quicken Loans through the use of the Telemarketing Agent. (Doc. 42 at ¶¶ 54–61.) This means Winters alleges Quicken Loans should be held vicariously liable for the actions taken by the Telemarketing Agent. Thus, to survive Quicken Loans' Motion, Winters' Third Amended Complaint must adequately allege an agency relationship between Quicken Loans and the Telemarketing Agent. *See Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 450 (9th Cir. 2018) ("A defendant is vicariously liable for violations of the TCPA where common law principles of agency would impose it."). The Court considers whether Winters has properly pleaded an agency relationship between Quicken Loans and the Telemarketing Agent. It concludes Winters has not pleaded sufficient facts to establish an agency relationship.

### A.  Agency

The Ninth Circuit relies "on the Restatement (Third) of Agency for common law agency principles." *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1072–73 (9th Cir. 2019), *as amended on denial of reh'g and reh'g en banc* (May 6, 2019). Thus, in the Ninth Circuit, "'[a]gency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act.'" *Jones*, 887 F.3d at 448 (quoting *Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017)). A key

principle of any agency relationship is control, especially when determining if vicarious liability exists. *See id.* at 450 ("In determining whether vicarious liability may be imposed, the 'extent of control exercised by the [principal]' is the 'essential ingredient.'" (quoting *United States v. Bonds*, 608 F.3d 495, 505 (9th Cir. 2010) (alterations in original)). Without control, there is no agency relationship. *See Mavrix Photographs*, 873 F.3d at 1054 ("For an agency relationship to exist, an agent must have authority to act on behalf of the principal and '[t]he person represented [must have] a right to control the actions of the agent.'" (quoting the RESTATEMENT (THIRD) OF AGENCY §1.01, cmt. c (AM. LAW INST. 2006) (alterations in original)).

Quicken Loans argues Winters' allegations about the Telemarketing Agent fail the standard in *Iqbal* and *Twombly* because they are "broad and conclusory" and are "insufficient to state a cognizable cellphone provision claim against Quicken Loans under . . . vicarious liability." (Doc. 43 at 12.) Quicken Loans contends Winters has not pleaded sufficient facts to establish the identity or existence of the Telemarketing Agent (*Id.*) Quicken Loans also argues that the alleged facts about the contract between it and the Telemarketing Agent are insufficiently pleaded. (*Id.* at 12–13.) Specifically, Quicken Loans maintains that Winters failed to "plead any facts about the existence or the content of the" contract "to allow this Court to conclude that" the existence of the contract is plausible "and to allow Quicken Loans to meaningfully respond to Plaintiff's claims." (*Id.*) Thus, Quicken Loans argues, it is "deprived of 'fair notice' of [Winters'] claims required by Rule 8." (*Id.* at 14.) In the event this Court does find Winters' allegations regarding the existence of the Telemarketing Agent sufficiently pleaded, Quicken Loans asserts that Winters does not allege "sufficient facts to support his theory of vicarious liability against Quicken Loans on the basis of calls or text messages placed by the Telemarketing Agent." (*Id.*) Quicken Loans argues that Winters' facts as pleaded are conclusory. (*Id.*) Accordingly, Quicken Loans maintains it is impossible to determine the existence of any agency relationship. (*Id.*)

Winters argues that he has pleaded sufficient facts to support his allegations. (*See generally*, Doc. 44 at 9–14.) Winters asserts he adequately alleges specific facts which would allow him to identify the Telemarketing Agent with the support of discovery. Winters also notes that the "Telemarketing Agent is the entity that placed calls on behalf of [Quicken Loans] to [Winters] on October 4, 2018 as well as October 5, 8, 9, 10, 12, 15, 16, and 18 of 2018." (*Id.* at 10.) He points to this as evidence of sufficiently pleaded facts because the Telemarketing Agent "can be specifically identified from [Quicken Loans'] records which will indicate where it transferred in the call from on October 4, 2018 and from [Quicken Loans'] records regarding which entity it contracted with to place such telemarketing calls." (*Id.*) Winters also challenges Quicken Loans' argument that he has pleaded insufficient facts regarding "the existence and specific contours of the contract at issue." (*Id.*) For example, Winters asserts that he has pleaded that the contract required the Telemarketing Agent to place "calls using a prerecorded voice to consumers, including [Winters], to generate leads for [Quicken Loans];" and allowed Quicken Loans to maintain "the right to substantially control the Telemarketing Agent's actions." (*Id.* at 11.) Quicken Loans counters by highlighting that Winters has not identified the Telemarketing Agent in the Third Amended Complaint and that Winters has not attached any contract to the Third Amended Complaint. (Doc. 45 at 9.) Quicken Loans argues this demonstrates that Winters' allegations are conclusory. (*Id.*) Finally, Winters notes that an agency relationship is sufficient to show a vicarious liability under the TCPA. (Doc. 44 at 11–12.) He lists the allegations made in the complaint and then asserts that, given these allegations, he sufficiently alleges facts to establish either actual express agency or ratification in the Third Amended Complaint. (*See Id.* at 13.)

Quicken Loans argues that Winters' allegations of "substantial control" are merely conclusory and speculative. (Doc. 45 at 9–10.) It questions how Winters is capable of knowing "that the alleged contract contains terms specifying the nature, type, content, frequency, and means of the calls to be placed and a unilateral termination provision" but

"does not know the name of the entity Quicken Loans supposedly contracted with and cannot produce the contract." (*Id.* at 10.) Quicken Loans asserts that Winters has either failed to properly plead the evidentiary support he does have or that Winters' arguments are based on "rank speculation." (*Id.*)

Winters' Third Amended Complaint has not adequately pleaded an agency relationship between the Telemarketing Agent and Quicken Loans because it relies on conclusory allegations. The existence of a contractual relationship between the Telemarketing Agent and Quicken Loans does not, in and of itself, mean that there is an agency relationship between the two parties. *See Abante Rooter & Plumbing v. Farmers Grp., Inc.*, No. 17-CV-03315-PJH, 2018 WL 288055, at *5 (N.D. Cal. Jan. 4, 2018) (A "court can infer that there is some relationship between" two parties, but "that inference is not enough [to establish agency] because it still does not allow the court to infer that defendant exercises control over the representatives.") Winters' allegations that the Telemarketing Agent acted pursuant to a contract; that Quicken Loans directed the Telemarketing Agent to place "calls using an [ATDS];" that the Telemarketing Agent acted within the express authority given by Quicken Loans; that Quicken Loans "substantially controlled" the Telemarketing Agent's actions "by specifying the nature and type of calls to be made, by specifying the nature and type of the calls to be placed, the means by which such calls were to be placed, the content of such calls, and by retaining the right to terminate the contract unilaterally;" and that the calls were "placed directly pursuant to [the] contract between Defendant and the Telemarketing Agent" are insufficient. (Doc. 42 at ¶¶ 7–11.) Key terms of the contract necessary to establish control are missing from the Third Amended Complaint. And so, these contract allegations do not establish that Quicken Loans had the requisite control over the Telemarketing Agent to establish agency. Indeed, many courts have dismissed TCPA claims for similar reasons.[3] Having inadequately pleaded that a contract established an agency relationship,

---

[3] *See, e.g.*, *Winters v. Grand Caribbean Cruises Inc.*, No. CV-20-00168-PHX-DWL, 2021 WL 3709854, at *5 (D. Ariz. Aug. 20, 2021); *see id.* at *5 n.2 (citing several cases).

- 8 -

Winters must rely on other theories that create an agency relationship between Quicken Loans and the Telemarketing Agent.

One of these theories is apparent authority. Winters' allegations do not sufficiently support this theory. Winters avers that "a reasonable consumer similarly situated to [Winters] would have believed that the robocall was placed by an agent of [Quicken Loans] with its express authority given that the robocall was transferred to a representative who identified [Quicken Loans] by name and the call was clearly made for the benefit of [Quicken Loans]." (Doc. 42 at ¶ 11.) But there is no indication in the Amended Compliant that Quicken Loans identified the Telemarketing Agent as a Quicken Loans' agent, commented on the Telemarketing Agent's role or authority, even mentioned the Telemarketing Agent, or made any manifestations indicating the Telemarketing Agent was its agent. (*See Id.*) "Apparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is reasonable and is traceable to a manifestation of the principal." RESTATEMENT (THIRD) OF AGENCY § 2.03 cmt. c (AM. LAW INST. 2006). And so, manifestations by the Telemarketing Agent without manifestations by Quicken Loans cannot establish apparent authority. Furthermore, the alleged transfer from the Telemarketing Agent to Quicken Loans cannot establish apparent authority because

> [A]n agent's apparent authority originates with expressive conduct by the principal toward a third party through which the principal manifests assent to action by the agent with legal consequences for the principal. Apparent authority is present only when a third party's belief is traceable to manifestations of the principal. The fact that one party performs a service that facilitates the other's business does not constitute such a manifestation.

*Id.* at § 3.03 cmt. b; *see Rogers v. Postmates Inc.*, No. 19-CV-05619-TSH, 2020 WL 3869191, at *6 (N.D. Cal. July 9, 2020), *appeal dismissed*, No. 20-16529, 2021 WL 455321 (9th Cir. Jan. 15, 2021) ("Apparent authority here would need to be

established by alleging that Postmates said or did something upon which Rogers relied. . . . Thus, the 'principal's manifestations' are lacking."); *Naiman v. TranzVia LLC*, No. 17-CV-4813-PJH, 2017 WL 5992123, at *12 (N.D. Cal. Dec. 4, 2017) ("Plaintiff alleges no facts showing that Rose reasonably believed, based on manifestations by TranzVia, that he had the authority to act on behalf of TranzVia in making the calls at issue.") Therefore, Winters has not sufficiently pleaded facts to establish apparent authority.

Another theory available to Winters is ratification. "Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." RESTATEMENT (THIRD) OF AGENCY § 4.01 (AM. LAW INST. 2006). "A person ratifies an act by (a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents." *Id.* Winters lists several allegations to support his ratification theory: (1) Winters alleges that Quicken Loans had knowledge of the Telemarketing Agent's conduct pursuant to the contract between the parties and therefore ratified that conduct; and (2) Winters alleges that Quicken Loans took no steps to stop the actions made by the Telemarketing Agent pursuant to the contract thereby ratifying his behavior. (Doc. 42 at ¶¶ 11–12.) But Winters fails to explain how Quicken Loans obtained knowledge of the Telemarketing Agent's conduct. Furthermore, the assertion that Quicken Loans took no steps to stop the Telemarketing Agent lacks any factual backing. Thus, both allegations are conclusory.

In short, Winters fails to allege sufficient facts to establish any agency relationship between the Telemarketing Agent and Quicken Loans. Thus, the Court grants Quicken Loans' Motion. The Court next considers whether to grant Winters leave to amend.

**B.     Peripheral Issues**

In addition to the Parties' agency arguments, the Court addresses three other issues the Parties raised in their briefs.[4]  First, Winters indicates in his response (Doc. 44) that

---

[4] In the Motion, Quicken Loans also argued that this case should be dismissed under the

he anticipates abandoning his text message claims in light of *Facebook, Inc. v. Duguid*. --- U.S. ---, 141 S. Ct. 1163 (2021). (Doc. 44 at 1 n.2.) But, as Quicken Loans highlights in its reply (Doc. 45), the Parties have not filed any motion or stipulation formalizing Winters' abandonment of those claims. (Doc. 45 at 1 n.1.) The text message allegations remain in the Third Amended Complaint. (*See generally*, Doc. 42.) And so, the Court has considered the TCPA claims regarding the phone calls and the text messages Winters alleges in his Third Amended Complaint.

Second, the Parties battle over the holding and proper interpretation of the Supreme Court's decision in *Duguid* regarding ATDSs. (*See, e.g.*, Doc. 43 at 7; Doc. 44 at 7; Doc. 45 at 7.) This Court does not address *Duguid* or whether Winters properly alleges facts to establish the Telemarketing Agent used an ATDS because Winters' claims against Quicken Loans ultimately fail on the threshold issue of agency. Winters' TCPA claims all rely on vicarious liability, but because Winters does not sufficiently allege an agency relationship between Quicken Loans and the Telemarketing Agent, Quicken Loans cannot be held vicariously liable. Thus, further discussion of his TCPA claims, including a discussion of *Duguid* and the legal definition of an ATDS is not necessary.

Third, Quicken Loans produced a transcript of the October 4, 2018, call and urges the Court to consider it. (Doc. 32-3; Doc. 43; Doc. 45.) But the transcript is irrelevant to this analysis. Winters' allegations, which he argues establish an agency relationship, rely on key facts that happened before the call transcript begins. (Doc. 44 at 6.) The transcript cannot clarify whether the Telemarketing Agent was Quicken Loans' agent. Because this Order grants the Motion on the grounds that an agency relationship was inadequately

---

first-filed doctrine because another "preexisting and overlapping putative class alleged in" *Lopez v. Quicken Loans Inc.*, No. 2:19-CV-13340 (E.D. Mich. Nov. 12, 2019) existed. (Doc. 43 at 16–17.) But in its reply, Quick Loans withdrew this argument because it anticipated that *Lopez* would be dismissed, mooting the first-to-file argument it made in the Motion. (Doc. 45 at 1 n.1.) Since then, *Lopez* was dismissed. The Court accepts Quicken Loans' withdrawal of its first-to-file arguments. (*Lopez*, No. 2:19-CV-13340, Order of Dismissal, ECF No. 33.)

pleaded, the Court need not discuss whether it can consider the irrelevant transcript when deciding the Motion.

### C. Leave to Amend

Federal Rule of Civil Procedure 15(a) provides that leave to amend should be freely granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). "The power to grant leave to amend . . . is entrusted to the discretion of the district court, which 'determines the propriety of a motion to amend by ascertaining the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility.'" *Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010) (quotation omitted). The Court's discretion to deny leave to amend is particularly broad where a plaintiff has previously amended the complaint. *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996).

District courts properly deny leave to amend if the proposed amendment would be futile or the amended complaint would be subject to dismissal. *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991). "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). "Undue delay by itself is insufficient to justify denying leave to amend" it must be accompanied by an "additional ground—such as prejudice or bad faith—that would justify the denial of leave to amend in combination with undue delay." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016) (internal citations omitted).

Winters' TCPA claims suffer from a non-futile flaw: he has not pleaded necessary facts to establish an agency relationship—the foundation of his TCPA claims. Winters specifically requests leave to amend in his response on the issue of agency arguing that he "could provide more allegations regarding the nature of the relationship between [Quicken Loans] and its Telemarketing Agent." (Doc. 44 at 14 n.12.) Thus, while the deficiencies in Winters' agency arguments in his Third Amended Complaint are

numerous, his allegations could be adequately pleaded if he provides nonconclusory facts in a fourth amended complaint. Accordingly, this Court should not deny leave to amend based on futility.

The Court construes Quicken Loans' argument, "enough is enough," as an argument for undue delay. (Doc. 45 at 11.) Quicken Loans' argument for undue delay carries much weight but, on balance, will be denied. Quicken Loans makes no argument that it has suffered undue prejudice or that Winters has acted in bad faith. And so, because courts favor granting leave to amend when justice requires, leave to amend is granted on Winters' TCPA claims. That said, Winters and his attorneys are reminded of their obligations under Rule 11, Fed. R. Civ. P., and elsewhere that claims asserted in a fourth amended complaint must "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Rule 11(b)(3). The Court will not entertain purely speculative allegations. Finally, the Court advises Winters that the delay factor is anticipated to strengthen in the event that the next amended complaint falls below expected pleading standards.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED granting** Defendant Quicken Loans, LLC's Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. 43). Quicken Loans' Motion as to all claims is granted for failure to state a claim, with leave to amend.

**IT IS FURTHER ORDERED** that Plaintiff Winters shall file a fourth amended complaint, if he so chooses, no later than **14 days** after this Order is filed.

///
///
///
///
///

**IT IS FINALLY ORDERED** that, if Plaintiff Winters fails to file a fourth amended complaint within 14 days of the date of this Order, the Clerk of the Court shall enter judgment dismissing this entire case with prejudice.

Dated this 29th day of October, 2021.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge